UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GENERAL SALES DRIVERS, DELIVERY DRIVERS & HELPERS, TEAM LOCAL UNION NO. 14,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MISSION OF NEVADA, INC., a Nevada corporation d/b/a MISSION INDUSTRIES,<br><br>　　　　　Defendant. | Case No.: 2:06-cv-00867-RLH-GWF<br><br>**O R D E R**<br><br>(Motion for Summary Judgment–#13) |

　　　　Before the Court is Plaintiff General Sales Drivers, Delivery Drivers & Helpers, Teamsters Local Union No. 14's **Motion for Summary Judgment** (#13), filed March 1, 2007. The Court has also considered Defendant Mission of Nevada, Inc.'s Opposition (#15), filed March 21, 2006. To date, no Reply has been filed.

**BACKGROUND**

　　　　Plaintiff is a labor organization representing employees in the state of Nevada. In November 2004, Plaintiff began negotiations for a collective bargaining agreement ("CBA") with Defendant, the Union members' employer. This was to be the seventh such agreement the Parties had entered over a seventeen-year business relationship. The previous six agreements had all

1

1  carried termination dates of December 31, of their respective years, and five of the six agreements
2  had been for a duration of three years. The Parties were unable to agree on the terms of the new
3  CBA by the expiration date of the previous agreement, December 31, 2004, and as a result,
4  Plaintiff went on strike. On January 4, 2005, the Parties met with a federal mediator and reached
5  an agreement on the economic aspects of the CBA; the expiration date of the new agreement was
6  not discussed. On January 5, 2005, Union members approved the terms of the agreement and the
7  Union ended its strike against Defendant the next day.

After the initial agreement was entered, a dispute arose between the Parties concerning Article 42 in a draft of the CBA, submitted by Defendant to Plaintiff, which stipulated a contract expiration date of January 4, 2008, instead of December 31, 2007.[1] As a result of this dispute, the Parties entered into a Memorandum of Agreement ("MOA") on March 10, 2005, in which they agreed that Articles 1 through 41 would be effective as of January 5, 2005. The Parties further agreed to submit to arbitration "the issue of the termination date of the agreement." (Opp'n, Ex. 2.)

On January 6, 2006, the arbitration proceedings began concerning the expiration date. The exact issue submitted to the arbitrator is disputed by the Parties: Plaintiff claims the issue was whether the contract expiration date was January 4, 2008, or December 31, 2007; Defendant argues that the issue was simply what the expiration date should be. On April 28, 2006, the arbitrator issued her opinion and award stating that the termination date of the current CBA was to be December 31, making no reference to the intended year. She further stated:

> Since a specific contract expiration date of December 31, 2007 would place the parties closest to having a contract of three years' duration, consistent with their history, I would be inclined to select December 31, 2007 as the specific contract expiration date. However, in order to insure the greatest period of labor peace between the parties, the Company in its sole discretion may select

---

[1] The December date constitutes a substantial bargaining chip for Plaintiff because a strike at this time of year would create a substantial hardship for Defendant. Plaintiff objected, throughout the bargaining process, to a change in the traditional expiration date.

2

December 31, <u>2008</u> rather than December 31, 2007 as the specific expiration date.

(*Id*., Ex.1 at 15) (emphasis in original).

Plaintiff now moves for summary judgment based on a claim that the arbitrator exceeded her authority by granting Defendant sole discretion to extend the CBA.

## DISCUSSION

**I. Summary Judgment standard**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 473 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir. 1982).

**A. Review of an Arbitration Award**

"The scope of review of an arbitrator's decision in a labor dispute is extremely narrow," *Federated Dep't Stores v. United Food & Commercial Workers Union*, 901 F.2d 1494, 1496 (9th Cir. 1990), and courts afford an arbitrator's decision a "nearly unparalleled degree of deference." *Stead Motors v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1205 (9th Cir. 1989). If an "arbitrator is even arguably construing or applying the contract and acting within scope of his authority," the fact that "a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "Only where the arbitrator ignores the contract's plain language, choosing instead to

1  dispense his own brand of industrial justice," may a court question an arbitrator's final decision.
2  *S. Cal. Gas Co. v. Util. Workers Union*, 265 F.3d 787, 792 (9th Cir. 2001).
3        Given the level of deference accorded to an arbitrator's decision, the Ninth Circuit
4  allows a district court to vacate an arbitration award only in certain narrow instances. Vacating an
5  arbitrator's award given under section 301 of the Labor Management Relations Act ("LMRA") is
6  only appropriate: "(1) when the award does not draw its essence from the collective bargaining
7  agreement and the arbitrator is dispensing [her] own brand of industrial justice; (2) where the
8  arbitrator exceeds the boundaries of the issues submitted to [her]; (3) when the award is contrary to
9  public policy; or (4) when the award is procured by fraud." *So. Cal. Gas*, 265 F.3d at 792-93.
10 Plaintiff's motion asserts that this Court should vacate, in part, the arbitrator's award based on the
11 first three instances. For reasons discussed below, this Court finds that Plaintiff is not entitled to
12 judgment as a matter of law.

      **1. The Award draws its essence from the CBA**

14       An award departs from the essence of a CBA when the arbitrator "'ignore[s] the
15 plain language of the contract' and 'instead follow[s] [her] own whims and biases.'" *Haw.*
16 *Teamsters v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001) (citations omitted).
17 However, the arbitrator's determination only needs to be a "'plausible interpretation' of the CBA."
18 *Ass'n of W. Pulp & Paper Workers, v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1091 (9th Cir. 2000).
19       In this case, Plaintiff asserts that the arbitrator departed from the essence of the
20 contract by granting Defendant the exclusive power to extend the CBA. Plaintiff argues that
21 several provisions of the CBA contemplated a contract limited to three years' duration, and
22 further, that the CBA did not provide one side the ability to unilaterally extend the duration of the
23 contract. While this argument has merit, given the level of deference afforded an arbitrator's
24 decision, it fails to sway the Court. The arbitrator's award is at least a plausible interpretation of
25 the CBA. The arbitrator set the termination date on December 31, consistent with the Parties'
26 history and the CBA, but also made sure the CBA was no shorter than the agreed upon three years;

4

1   which is also consistent with the essence of the CBA.  While the exact reasoning for her
2   interpretation is somewhat ambiguous, "[a] mere ambiguity in the opinion accompanying an
3   award, which permits the inference that the arbitrator may have exceeded [her] authority, is not a
4   reason for refusing to enforce the award." *United Steelworkers of Am. v. Enter. Wheel & Car*
5   *Corp.*, 363 U.S. 593, 598 (1960).  Thus, the Court finds that the arbitrator's award drew its essence
6   from the CBA.

### 2. The Arbitrator acted within the boundaries of her authority

When an arbitrator "exceeds the boundary of the submission to [her], the award will be held invalid." *La Mirada Trucking, Inc. v. Teamsters Local Union 166*, 538 F.2d 286, 288 (9th Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977).  First, this Court must determine what issue was presented to the arbitrator.  The Ninth Circuit treats an "arbitrator's interpretation of the scope of issues submitted to [her] with great deference." *Federated*, 901 F.2d at 1498.  Looking at the documents submitted in this case, it seems clear that the arbitrator interpreted the issue regarding the determination of the CBA's expiration date broadly.  The MOA expressly states that arbitration was being sought to "resolve the issue of the termination date of the agreement," (Opp'n, Ex. 2), and on page two of the arbitrator's opinion and award she states that the arbitration was submitted to her "to resolve an issue regarding the expiration date of the current [CBA] between the parties." (*Id.,* Ex. 1 at 2).

Plaintiff argues that the arbitrator exceeded the scope of the issue presented to her by giving Defendant the sole discretion to extend the CBA for an additional year.  This Court finds, however, that the arbitrator was acting within the authority granted her by the Parties and under her best judgment.  "[Though] the arbitrator's decision must draw its essence from the agreement, [she] 'is to bring [her] informed judgment to bear in order to reach a fair solution of a problem.  *This is especially true when it comes to formulating remedies*.'" *Misco*, 484 U.S. at 41 (quoting *Enterprise Wheel*, 363 U.S. at 597) (emphasis added by the *Misco* court).  It cannot be argued that, on the issue presented to her, the arbitrator would not have had the authority to set the

1  CBA's expiration date as December 31, 2008.  The award that granted Defendant the sole ability
2  to extend the contract to this date is essentially the same as if the arbitrator had set that date
3  herself; as such, it is a distinction without a difference.  Thus, the Court finds that the arbitrator did
4  not exceed her authority.

### 3. The Award is not contrary to public policy

6  "[A] court need not, in fact cannot, enforce an award which violates public policy."
7  *Stead Motors,* 886 F.2d at 1209.  However, the public policy must be explicit, well-defined, and
8  dominant.  *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983).  In the Ninth Circuit,
9  "[a] court must both delineate an overriding public policy rooted in something more than 'general
10 considerations of supposed public interests,' and, of equal significance, it must demonstrate that
11 the policy is one that specifically militates against the relief ordered by the arbitrator." *Id.* at 1212-
12 13 (quoting *Misco*, 484 U.S. at 44).

13 Plaintiff asserts that the arbitrator's award violates the policy behind the National
14 Labor Relations Act ("NLRA"); which "encourag[es] the practice and procedure of collective
15 bargaining," which protects workers' rights to "negotiat[e] the terms and conditions of their
16 employment or other mutual aid or protection." 29 U.S.C. § 151 (2000).  Specifically, Plaintiff
17 argues that the arbitrator's decision undermines Plaintiff's ability to "act collectively to improve
18 their wages, hours and working conditions on December 31, 2007." (Pl.'s Mot. 12.)  Plaintiff's
19 argument meets the first part of the Ninth Circuit requirement because "the public policy set forth
20 in the NLRA represents 'well defined and dominant public policy.'" *Van Waters & Rogers, Inc. v.*
21 *Int'l Bhd. of Teamsters,* 913 F.2d 736, 743 (9th Cir. 1990).  However, as both Plaintiff and
22 Defendant assert, another purpose of the NLRA is to minimize disruption to the employer and the
23 employee, and to the public generally.  29 U.S.C. § 151.

24 Here, the NLRA does not militate against the arbitrator's decision.  The arbitrator
25 states that the award was given "to ensure the greatest period of labor peace between the parties,"
26 (Opp'n, Ex. 1 at 15), which goes to the heart of national labor policy.  Further, the Union did have

an opportunity to negotiate the terms of the CBA and it voluntarily submitted to binding arbitration on the expiration date to complete the agreement. "The labor arbitrator is the person the parties designate to fill in the gaps." *Stead Motors*, 886 F.2d at 1205. The arbitrator's award "is an expression of the parties' will" and becomes the contract. *Id.* at 1206. The arbitrator's award is not contrary to public policy. For this reason and those stated above, this Court denies Plaintiff's motion for summary judgment.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (#13) is DENIED.

Dated:   June 5, 2007.

_____
ROGER L. HUNT
Chief United States District Judge

AO 72 (Rev. 8/82)